IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| THOMAS L. HENDERSON, | CV-09-78-BLG-RFC-CSO |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE |
| YELLOWSTONE VALLEY RAILROAD, INC., | |
| Defendant. | |

Plaintiff Thomas L. Henderson ("Henderson") filed this action against Yellowstone Valley Railroad, Inc. ("YVR") claiming damages as a result of a fire on Henderson's property. The complaint alleges that this Court has diversity jurisdiction under 28 U.S.C. § 1332.

Currently pending before the Court is YVR's Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Def.'s Mot. Dismiss") (Court Doc. 21). For the reasons stated below, the Court recommends that YVR's motion be GRANTED.

I.    BACKGROUND

According to the affidavit of its former general manager, YVR operates a short line railroad, utilizing 127 miles of railroad track, in

four eastern Montana counties and one North Dakota county.  Aff.
Travis Dimond (Court Doc. 22-2) at ¶ 3 (Sept. 18, 2009).  The vast
majority of YVR's track, 120 miles, is located in Montana.  Only 7
miles of track are located in North Dakota.  Its railroad operations are
conducted out of Sidney, Montana, where it has a staff of twelve
employees.  YVR services numerous Montana clients and one North
Dakota client based out of its Sidney office.

YVR is a subsidiary of Watco Companies, Inc.  Watco Companies,
Inc. is the direct parent of Watco Transportation Services, Inc.
(collectively "Watco"), the sole shareholder of YVR.  Watco is located in
Pittsburg, Kansas.  YVR utilizes the services of Lori Magee, the
Director of Claims / Risk Management for Watco, to handle its claims.
Ms. Magee works out of Watco's Pittsburg, Kansas, office.  YVR is
incorporated under the laws of Idaho and maintains corporate offices
there.  Additionally, its Chief Operating Officer and Director of
Railroad Operations work out of the Idaho office.  In addition to
providing services to YVR, they are also Watco employees.

On March 24, 2008, a fire occurred on YVR's right of way near
Crane, Montana, in Richland county.  According to the Plaintiff, his

property was destroyed, and he was exposed to fire, smoke, and the risk of physical injury.  Pl.'s Compl. (Court Doc. 1) at ¶ 13 (June 19, 2009).  YVR has admitted that the fire was started by one of its trains, and that the fire spread from YVR's right of way due, in part, to the presence of combustible materials in the right of way.  Def.'s 2d Amended Ans. (Court Doc. 20) at ¶ 7 (Sept. 17, 2009).  YVR admits that it violated § 69-14-721, M.C.A., and that it is strictly liable for that violation.  Id. at ¶ 10.

## II.   PARTIES' ARGUMENTS

YVR argues that this case should be dismissed for lack of subject matter jurisdiction.  Def.'s Mot. Dismiss (Court Doc. 21).  YVR asserts that it is a citizen of Montana, and consequently diversity jurisdiction does not exist.  Def.'s Br. in Support of Mot. Dismiss ("Def.'s Br. Mot. Dismiss") (Court Doc. 22) at 3 (Sept. 18, 2009).  YVR claims that the "place of operations" test, the primary test utilized by the Ninth Circuit to determine corporate citizenship, should be applied to determine its citizenship.  Id. at 4-9.  When this test is applied, YVR argues, it is clear that YVR is a citizen of Montana, and, therefore, diversity is defeated.  Id. at 8-9.

Henderson argues that, because YVR's operations are spread across four different states, the "place of operations" test is inappropriate.  Pl.'s Br. in Opposition to Motion to Dismiss ("Pl.'s Response") (Court Doc. 23) at 5 (Sept. 30, 2009)[1].  Instead, it argues, the Court should apply the "nerve center" test, the secondary test employed by the Ninth Circuit to determine corporate citizenship.  Id.  Henderson contends that when this test is applied, it is clear that YVR is a citizen of either Idaho or Kansas, and diversity is not defeated.  Id.  Henderson further argues that even if the Court applies the place of operations test, because YVR's corporate offices and officers are located in Idaho and its parent corporation is based in Kansas, a substantial predominance of YVR's operations takes place in Idaho and Kansas, and diversity of citizenship exists.  Id. at 1.

III.   DISCUSSION

The party asserting federal jurisdiction, Henderson in this case, bears the burden of proving jurisdiction on a motion to dismiss for lack

---

[1] Plaintiff's brief violates L.R. 10.1(a) requiring all documents filed with the Court to be in at least 14 point font.  Counsel should ensure that all future filings are in compliance with the local rules.

of subject matter jurisdiction.  In re Dynamic Random Access Memory

(DRAM) Antitrust Litigation, 546 F.3d 981, 984-85 (9th Cir. 2008).

Because Henderson is a citizen of Montana, diversity jurisdiction is

lost if YVR also is a citizen of Montana.

A corporation is a citizen of the state under whose laws it is

incorporated and a citizen of the state of its "principal place of

business."  28 U.S.C. § 1332(c)(1); Davis v. HSBC Bank Nevada, N.A.,

557 F.3d 1026, 1028 (9th Cir. 2009).  YVR is incorporated in Idaho.

Thus the dispositive issue here is whether YVR's principal place of

business is in Montana or another state.

The Ninth Circuit employs two tests to determine a corporation's

principal place of business:

> First we apply the "place of operations" test.  Under that test, a
> corporation's principal place of business is the state containing
> "'a substantial predominance of corporate operations.'" Tosco
> Corp.[,] 236 F.3d [at] 500 ... (quoting Indus. Tectonics, Inc. v.
> Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990)).  If no state
> contains a "substantial predominance" of corporate operations,
> we apply the "nerve center" test, which locates the corporation's
> principal place of business in the state where "the majority of its
> executive and administrative functions are performed." Id.

Davis, 557 F.3d at 1028.  The "place of operations" test is to be applied

first.  Id.  Where a corporation's citizenship can be determined based

on where the substantial predominance of its corporate operations occur, there is no need to turn to the nerve center test. <u>See</u> <u>id</u>.

Determining where a corporation's operations "substantially predominate" necessarily involves a comparison of activities in the state at issue with its activities in other states. <u>Id</u>. The Ninth Circuit considers a variety of factors to determine where there is a substantial predominance of corporate activities, including: "the location of employees, tangible property, production activities, sources of income, and where sales take place." <u>Id</u>. at 1028 (internal citations omitted). A corporation's headquarters need not be located in the same state as the substantial predominance of its corporate operations, <u>Industrial Tectonics</u>, 912 F.2d at 1094. Likewise, the state of corporate citizenship need not even contain the majority of the corporation's operations, just a "significantly larger" portion of the operations relative to the corporation's operations in other individual states. <u>Davis</u>, 557 F.3d at 1028-29 (quoting <u>Tosco</u>, 236 F.3d at 500). "[B]oth the nature of the corporation's business activities and the purposes of the corporate citizenship statute" must be considered when determining principal place of business. <u>Id</u>.

Applying the place of operations test, it is clear that Montana contains a substantial predominance of YVR's corporate operations. While YVR maintains corporate offices in Idaho, and utilizes the services of a Claims / Risk Management Director in Kansas, its railroad business is almost exclusively conducted in Montana.  <u>See</u> Aff. Dimond (Court Doc. 22-2) ¶ 3; Def.'s Ans. Requests for Admission (Court Doc. 23-2) at 2-3.  Although YVR's Chief Operating Officer and Director of Railroad Operations are Watco employees in Idaho, YVR does not conduct any of its daily railroad operations in Idaho.  <u>See</u> Aff. Dimond at ¶ 4.  The Claims / Risk Management Director located in Kansas is also a Watco employee and provides only claims-handling services for YVR.  <u>See</u> Def.'s Ans. Requests for Admission (Court Doc. 23-2) at 3.  These Idaho and Kansas operations all relate to YVR's business operations which are conducted almost exclusively in Montana.

YVR's operations in Montana are "significantly larger" than its operations in any other state.  YVR is in the railroad business, and the overwhelming weight of its railroad business is conducted in Montana. YVR operates its trains on 127 miles of track in four Montana counties

and one North Dakota county.  Aff. Dimond (Court Doc. 22-2) at 3.  Of YVR's 127 miles of track, 100 miles are located in Montana, and all of its railroad operations originate in Sidney, Montana.  Id.  All twelve of YVR's operational employees, including its general manager, are based in Sidney, Montana.  Id.  All of YVR's clients, save one, are located in Montana.  Id.

YVR's circumstances are similar to those discussed in Industrial Tectonics where, despite a manufacturing corporation's headquarters and most of its corporate officers being located in Michigan, its principal place of business was determined to be in California - where the bulk of the manufacturing took place.  See Indus. Tectonics, 912 F.2d at 1093 (corporation's principal place of business held to be located in a different state than "most corporate officers.").  "[A] corporation's principal place of business generally should be where most business operations are carried out rather than where policy making functions are carried out."  Id. at 1094; see also Tosco, 236 F.3d at 502 (despite having operations and executive offices in other parts of the United States, the corporation's presence in California significantly outweighed its presence in any other state so that the

court was able to apply the place of operations test to determine corporate citizenship).  YVR overwhelmingly employs Montanans, services Montanans, and operates in Montana.  Thus, under the place of operations test, YVR is clearly a citizen of Montana.  YVR's operations are not so spread out as to require the application of the nerve center test.

The policy behind diversity jurisdiction, which is "founded on assurance to non-resident litigants of courts free from susceptibility to potential local bias" (Guaranty Trust Co. v. York, 326 U.S. 99, 111 (1945)), would not be served by denying YVR's motion to dismiss.

Plaintiff argues that Watco's operations outside of Montana establish YVR's citizenship outside of the state.  Pl.'s Response (Court Doc. 23) at 2-5.  Parent and subsidiary corporations are generally treated as separate entities for jurisdictional purposes.  See Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333 (1925) (cited in China Basin Properties, LTD. v. Allendale Mutual Insurance Co., 818 F. Supp. 1301, 1305-06 (N.D. Cal. 1992)).  And even if the Director of Claims / Risk Management, Chief Operating Officer, and Director of Railroad Operations were YVR employees, as explained above their

activities do not alter the Court's determination regarding YVR's principal place of business in light of the overwhelming predominance of operations in Montana.

Plaintiff also argues that the Court should allow more discovery on the issue of jurisdiction. Plaintiff claims that additional information is required before the jurisdictional question can be answered. Pl.'s Response (Court Doc. 23) at 4. Plaintiff claims, for example, that the following questions must be answered before the Court renders its jurisdictional decision: (1) "Who made the decision to admit liability?" and (2) "Who decided to violate Montana law and allow dry vegetation and other combustible materials to accumulate and cause a fire on Yellowstone's right-of-way in violation of § 69-14-721, MCA?" Id. at 4-5. This discovery, however, is more informative regarding the merits of the action than the issue of jurisdiction. Even when the Court assumes all of these decisions occurred out-of-state, or indicate out-of-state activity, YVR's principal place of business is unchanged. Furthermore, if there were any remaining uncertainties regarding YVR's principal place of business, which there are not, they would be resolved against finding jurisdiction. Kantor v. Wellesley

Galleries, Ltd., 704 F.2d 1088, 1092 (9th Cir. 1983) (Federal courts have limited jurisdiction, and any doubt as to whether jurisdiction exists is normally resolved against a finding of such jurisdiction.).  Thus, Plaintiff has failed to establish any basis for federal jurisdiction.

III.   <u>CONCLUSION</u>

Based on the foregoing,

IT IS RECOMMENDED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Court Doc. 21) be GRANTED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of U.S. Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 7th day of December, 2009.

/s/ Carolyn S. Ostby
United States Magistrate Judge